U.S. LIFE TITLE COMPANY OF DAL-LAS and O'Neal Munn, Appellants,

v.

G.M. ANDREEN, et ux., and Valeria J. Hoelscher, Appellees.

No. 16831.

Court of Appeals of Texas,
San Antonio.

Dec. 22, 1982.

Stephen P. Allison, Mark Cannan, San Antonio, for appellants.

Kenneth Beanland, Charles C. Wright, Henry Grun, Jr., Grun & Grun, San Antonio, for appellees.

## OPINION

Before ESQUIVEL, BUTTS and BASKIN, JJ.

BUTTS, Justice.

This is an appeal from a judgment declaring property located at 235 Rockhill Drive, San Antonio, Texas, to be subject to the terms and conditions of a repurchase agreement executed between G.M. Andreen and his wife, Betty L. Andreen, appellees, and Valeria J. Hoelscher. We affirm the judgment.

The evidence shows that the Andreens originally owned the property subject to a mortgage carried by First Federal Savings & Loan, San Antonio, Texas. Because of financial difficulties, appellees defaulted on mortgage payments and the property was posted for sale by First Federal. G.M. Andreen contacted a friend, Joe Hoelscher, in an effort to obtain financial assistance.

On June 24, 1977, the Andreens conveyed the property to Joe Hoelscher's daughter, Valeria J. Hoelscher, by warranty deed executed at Travis Savings & Loan, San Antonio, Texas. Subsequent to the completion of the transactions with Travis Savings & Loan, the parties exited the building and in the adjacent parking lot the Andreens executed an instrument captioned Repurchase Agreement. There is consonance that Valeria Hoelscher signed subsequent to the others, however, there is conflict whether she signed that day or the next. The agreement provided that G.M. Andreen, his heirs and assigns, had the exclusive right to repurchase from Valeria Hoelscher, her heirs and assigns, the residence at 235 Rockhill at any time within five (5) years after the date of the agreement upon payment or assumption of the outstanding principal of the mortgage of $25,000 held by Travis Savings & Loan as of June 24, 1977, plus a bonus of $500 for each six (6) months or any part thereof from the effective date of the agreement to the time the rights granted were exercised.[1]

Valeria Hoelscher sold the subject property on September 27, 1978, to appellant,

---

1. Joe Hoelscher and G.M. Andreen had earlier become friends while working for the same employer. After Andreen explained his financial predicament, Hoelscher consented to making a personal loan and arranged the transaction whereby his daughter, Valeria Hoelscher, purchased the property.

O'Neal Munn, for $63,000. She repaid the Travis Savings and Loan debt of $25,000. G.M. Andreen executed an affidavit attesting to the existence of the repurchase agreement which was filed in the Bexar County Deed Records on October 3, 1978. A notice of *lis pendens* pertaining to the instant property was filed on November 13, 1978. In the spring of 1979, Munn conveyed the property by warranty deed to Tony Hoffman Company, Inc., which sold the property to Broadway National Bank on February 20, 1979. Broadway National Bank conveyed the property to appellant, U.S. Life, on June 2, 1980.

 Appellants bring a combined total of seventy-five (75) points of error. The majority of these points assert with particularity trial court error based on (1) refusal to grant a directed verdict; (2) refusal to grant judgment *non obstante veredicto;* (3) no evidence; or (4) insufficient evidence. A directed verdict is properly granted only when there is no evidence to raise a fact issue on the material questions presented. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex. 1978). The judgment *non obstante veredicto* is dependent on the same no evidence standard. *Brooks v. Taylor,* 359 S.W.2d

539, 542 (Tex.Civ.App.—Amarillo 1962, writ ref'd n.r.e.). In deciding a "no evidence" point, which is a question of law, we may consider only that evidence and reasonable inferences therefrom which, viewed in its most favorable light, support the jury finding, and we must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981). After first passing on no evidence contentions, the court considers points of error based on "insufficient evidence" by an examination of all the evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

U.S. Life's ninth point of error claims a directed verdict should have been given since the evidence conclusively established that the repurchase agreement was not executed simultaneously or contemporaneously with the execution of the warranty deed.

 In conjunction with this and by its points of error ten and eleven U.S. Life alleges the trial court erred in refusing appellant's requested special issues inquiring whether the repurchase agreement was executed simultaneously or contemporaneously with the warranty deed.[2] Written

**2.** The *Jury Charge:*

*Question No. 1:* Do you find from a preponderance of the evidence that O'Neal Munn purchased the property at 235 Rockhill Drive, San Antonio, Texas, for a valuable consideration, without actual or constructive notice of the Andreens' repurchase agreement, and not in bad faith?

You are instructed that "actual notice" exists when knowledge is actually brought home to the purchaser, or when, by the use of reasonable diligence, the purchaser could have learned of the existence of another's equity, claim, or title.

You are instructed that "constructive notice" is an irrebuttable presumption that arises when certain facts, such as proper filing of a deed under the recording statutes or of a lis pendens notice, are established.

You are instructed that "bad faith" is imputed if it is shown that the purchaser is in fact acquainted with some circumstances which would put a prudent person upon inquiry leading to knowledge of the adverse claim.

Answer "We do" or "We do not."

We, the jury, answer: WE DO NOT

*Question No. 2:* Do you find from a preponderance of the evidence that there was any consid-

eration supporting the repurchase agreement of June 25, 1977, and marked as Plaintiffs' Exhibit No. 1?

"Consideration" means something of value moving from one person to another and may be either a benefit to the promissor or a detriment to the promissee. It also means something that is given in exchange, or something that is mutual, and the inducement for the contract, being both lawful and valuable.

Answer "We do" or "We do not."

We, the jury, answer: WE DO

*Question No. 3:* Do you find from a preponderance of the evidence that when USLIFE Title Company of Dallas purchased the property at 235 Rockhill Drive, San Antonio, Texas, on June 2, 1980, USLIFE Title Company of Dallas was without actual or constructive notice of the existence of the Andreens' repurchase agreement?

You are instructed that "actual notice" exists when knowledge is actually brought home to the purchaser, or when, by the use of reasonable diligence, the purchaser could have learned of the existence of another's equity, claim, or title.

contracts executed in different instruments whereby a single purpose or transaction is consummated are to be taken together as one contract. *Estate of Griffin v. Sumner,* 604 S.W.2d 221, 228 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). The instruments are to be read together although they do not expressly refer to each other and were not executed at the same time. *Board of Insurance Commissioners v. Great Southern Life Insurance,* 150 Tex. 258, 239 S.W.2d 803, 809 (1951).

■ Pertaining to the same property, the present instruments consist of (1) a warranty deed from the Andreens to Valeria Hoelscher, and (2) a repurchase agreement whereby Valeria Hoelscher granted the Andreens the right to repurchase the property within five (5) years upon satisfaction of the stipulated conditions. The record reflects that prior to the execution of the warranty deed the principals contemplated execution of a repurchase agreement. Valeria Hoelscher testified "Daddy mentioned something to the effect of that" several days before the transaction. We hold there was evidence that the instruments were executed to consummate a single transaction and overrule U.S. Life's ninth point of error.

■ Furthermore, where the instruments relate to the same transaction, the time of execution of the respective instruments is not in issue. *See Harris v. Rowe,* 593 S.W.2d 303 (Tex.1980) (four month peri-od). We find the trial court's denial of requested issues dealing with simultaneous or contemporaneous execution proper since they did not go to a controlling issue. *James v. Haupt,* 573 S.W.2d 285, 288 (Tex. Civ.App.—Tyler 1978, writ ref'd n.r.e.), U.S. Life's points of error ten and eleven are overruled.

## CONSIDERATION

■ U.S. Life's points of error one through eight and Munn's points of error four through seven challenge the existence or adequacy of the evidence establishing consideration for the repurchase agreement. As discussed *supra,* the warranty deed and the repurchase agreement are to be construed as components of a single instrument. The fact that the repurchase agreement and the warranty deed were not executed simultaneously does not destroy all possible argument as to consideration supporting the repurchase agreement. *Martin v. Davis Constructors, Inc.,* 552 S.W.2d 873, 877 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). The consideration underlying the warranty deed consisted of the conveyance of the property by the Andreens to Valeria Hoelscher in return for the $25,000. We hold that the consideration supporting the warranty deed also served as consideration for the repurchase agreement. Moreover, the agreement to repurchase prohibited Hoelscher from selling the property within the specified five year period. In return for this forbearance Andreen agreed

You are instructed that "constructive notice" is an irrebuttable presumption that arises when certain facts, such as proper filing of a deed under the recording statutes or of a lis pendens notice, are established.
Answer "We do" or "We do not."
We, the jury, answer: WE DO NOT
*Question No. 4:* Do you find from a preponderance of the evidence that Valeria J. Hoelscher, by the sale of the property at 235 Rockhill Drive, San Antonio, Texas, to O'Neal Munn on September 27, 1978, became incapable of discharging her obligations if any, under the repurchase agreement?
Answer "We do" or "We do not."
We, the jury, answer: WE DO
*Question No. 5:* Find from a preponderance of the evidence the market value of the property, including the building thereon, at 235 Rockhill

Drive, San Antonio, Texas, on September 27, 1978.
"Market value" means the amount that would be paid by a willing buyer who desires to buy but is not required to buy to a willing seller who desires to sell but is under no necessity to sell.
Answer in dollars and cents, if any:
We, the jury, answer: $110,000.00.
*Question No. 6:* Find from a preponderance of the evidence the amount of money, if any, under the terms of the repurchase agreement G.M. Andreen, his heirs or assigns would have had to pay to Valeria J. Hoelscher, her heirs or assigns, for the property at 235 Rockhill Drive, San Antonio, Texas, on September 27, 1978.
Answer in dollars and cents, if any:
We, the jury, answer: $26,500.00.

to pay Hoelscher the sum of $500 for each six-month period, or any part thereof, from the effective date of the agreement to the time the rights granted were exercised or until the expiration of that five year period. *See generally,* Restatement of Law on Contracts, 2d Ed., §§ 71, 72 (1981). The evidence shows no dispute between the parties to the warranty deed and repurchase agreement as to their mutual intent. There exists a statutory presumption that all written contracts are supported by consideration. *Unthank v. Rippstein,* 386 S.W.2d 134, 138 (Tex.1964). We hold that appellants have failed to demonstrate want of consideration. Accordingly, we overrule these points of error.

## RESTRAINT ON ALIENATION

▆▆▆▆ U.S. Life's points of error one, three, and twelve through eighteen are premised on the repurchase agreement being a restraint on alienation. To constitute an unreasonable restraint, the purchase agreement must contain a direction to the vendee ordering him not to convey. *Mattern v. Herzog,* 367 S.W.2d 312, 319 (Tex. 1963). The instant repurchase agreement does not contain such a directive, but operates by indirection in that any conveyance by Valeria Hoelscher may be defeated by the exercise of the repurchase right. *Id.* We find the evidence factually sufficient to show the repurchase agreement was reasonable. By point of error seventeen U.S. Life argues that the jury's answers to special issues five and six should have been disregarded because of the insufficiency of the evidence; we also evaluate these issues on a no evidence basis. *Garza, supra,* at 824. Accordingly, points of error one, three, and twelve through eighteen are without merit.

## AMBIGUITY

▆▆▆▆ Predicating its points of error one, three, and nineteen through twenty-three on the repurchase agreement being void and unenforceable, U.S. Life asserts the agreement was ambiguous as a matter of law. Ambiguity is a question of law which the court decides by looking at the

contract as a whole and in light of the circumstances present when the contract was entered into. *Church's Fried Chicken, Inc. v. Jim Dandy Fast Foods, Inc.,* 608 S.W.2d 242, 244 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). Subsequent events are not to be considered. *Burrus Mills, Inc. v. Hein,* 378 S.W.2d 85, 88 (Tex. Civ.App.—Dallas 1964, writ dism'd). Appellant's claim that the full payment of the Travis Savings & Loan note by Hoelscher after the repurchase agreement was executed caused the agreement to be interpreted as requiring either payment of $25,000 principal plus $500 for each six month period or no principal and only $500 for each six month period. The payment of the note occurred after the execution of the repurchase agreement and is a subsequent event which cannot be used to establish the ambiguity of the repurchase agreement. We conclude that the repurchase agreement was not ambiguous as matter of law and overrule appellant's contentions.

## REQUIREMENT OF TENDER

▆▆▆▆ U.S. Life's points of error twenty-four through twenty-six and Munn's points of error one through three cite error based on appellees' failure to plead or prove any tender of performance. Appellants properly state the tenet that a vendee must have made a correct tender to the vendor to obtain specific performance. *McMillan v. Smith,* 363 S.W.2d 437, 442 (Tex.1962). The instant case, however, is not one for specific performance. Appellees sought only to *judicially impress upon the subject property their rights to repurchase,* not an immediate conveyance. The judgment decreed only that the appellants have taken the property subject to the terms of the repurchase agreement. Appellant's contentions that tender is a material prerequisite to the instant case are incorrect and overruled.

▆▆▆▆ U.S. Life's points of error thirty-four and Munn's twelfth point of error contend that special issue number one, inquiring as to Munn's actual or constructive notice of the repurchase agreement, improperly placed the burden of proof on ap-

pellants. U.S. Life's points of error thirty-five claims the trial court erred in rendering judgment for appellees on the jury's answer because of the improperly placed burden. Special issue number one states, in pertinent part:

Do you find from a preponderance of the evidence that O'Neal Munn purchased the property at 235 Rockhill Drive, San Antonio, Texas, for a valuable consideration, without actual or constructive notice of the Andreen's repurchase agreement, and not in bad faith?

The trial court is granted broad discretion in the submission of special issues. *State v. Norris,* 550 S.W.2d 386, 387 (Tex.Civ.App.— Corpus Christi 1977, writ ref'd n.r.e.). Tex. R.Civ.P. 277 no longer requires that "[w]here practical, all issues should be submitted in the affirmative . . .". Although the issue may have been framed differently, we find that the submission of the special issue in the negative was not an abuse of discretion and did not shift the burden of proof. Appellant's points of error are overruled.

## CATEGORIZATION OF TRANSACTION

U.S. Life's points of error thirty-six through forty-one and fifty-seven are predicated on the allegation that the sole remedy available to appellees was damages. Appellant supports this contention by claiming the transaction between Andreen and Hoelscher constituted an unconditional sale with an option to repurchase and not a conditional sale.

■■■■ The categorization of a transaction is dependent on the facts at the time it was made and subsequent occurrences are not to be considered. *Lusher v. First National Bank of Forth Worth,* 260 S.W.2d 621, 626 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.). A conditional sale of real estate is an executed contract passing title from the vendor to the vendee subject to specific conditions upon which reconveyance is to be made to the grantor. *Hancock v. Sammons,* 267 S.W.2d 252, 256 (Tex.Civ. App.—Fort Worth 1954, writ ref'd n.r.e.). The condition upon which reconveyance is

made must specifically delineate the time within which the right to reconveyance is conditioned. *Lusher, supra.*

■■■■ Andreen stated he would not have "signed over the house" to Hoelscher if he "had not also gotten a repurchase agreement". Hoelscher testified that several days prior to the transaction with the Andreens she was aware of the existence of a repurchase agreement. As previously discussed, the warranty deed and the repurchase agreement are to be construed as components of a single instrument. The requirement of a specific time period for reconveyance was satisfied by the five year period set forth in the repurchase agreement. We find the transaction constitutes a conditional sale and deny appellant's points of error.

■■■■ U.S. Life's point of error forty-two contends that special issue number one was multifarious in that the same made inquiry into separate and distinct factual issues of consideration, notice and bad faith. An issue is not objectionable because it contains a combination of elements or issues. *Security Federal Savings & Loan Association v. DeWitt,* 536 S.W.2d 262, 265 (Tex.Civ.App. —Amarillo 1976, writ ref'd n.r.e.). The grouping of more than one fact element in an issue does not render it multifarious provided it includes only one controlling or ultimate issue. *Texas Railroad Co. v. Shelton,* 383 S.W.2d 842, 847 (Tex.Civ.App.— Dallas 1964, writ ref'd n.r.e.), *cert. denied,* 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (1965). We find the issue makes one controlling inquiry as to the *bona fide* purchaser status of Munn. Appellant's point of error forty-two is denied.

## NOTICE

■■■■ U.S. Life's points of error twenty-seven through thirty-three and Munn's points of error eight through eleven challenge the existence or sufficiency of the evidence establishing that O'Neal Munn knew or had notice of the repurchase agreement prior to or at the time he purchased the subject property. U.S. Life also con-

tends in point of error forty-three that because there was no evidence of notice to Munn, the trial court erred by submitting special issue number one, inquiring whether Munn was a *bona fide* purchaser. Munn testified that prior to his purchase of the property from Hoelscher, he had not been shown the repurchase agreement nor been told of its existence. Contrary to that, Joe Hoelscher testified that the "Andreen file" which was in his office contained a copy of the repurchase agreement. Confirming this, Valeria Hoelscher testified she obtained that file, consisting of "five to ten documents," from her father's office and delivered it to Munn for his inspection. Although she could not unequivocally state that the agreement was in the file, she did testify that the repurchase agreement was on a yellow sheet of paper and that she observed Munn examining a yellow sheet during his review of the file's contents. We find there was evidence of prior notice and such evidence was factually sufficient to find that Munn had prior notice of the repurchase agreement. The contention that an issue should not have been submitted to the jury is valid only when there is no evidence to warrant submission of the issue. *Garza, supra.* Accordingly, based upon our finding of factually sufficient evidence of notice before the jury, we overrule these points of error.

■ U.S. Life's point of error forty-four alleges that the definition of constructive notice included in special issue number one contained an improper comment concerning *lis pendens.* The instruction was:

> You are instructed that "constructive notice" is an irrebuttable presumption that arises when certain facts, such as proper filing of a deed under the recording statutes or a lis pendens notice, are established.

Appellant initially asserts the impropriety of a direct question to the jury concerning constructive notice which is a legal presumption. *University State Bank v. Gifford-Hill Concrete Corp.,* 431 S.W.2d 561, 570 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.). As stated in 3 R. Macdonald, Texas Civil Practice, § 12.37.2 (rev'd 1970):

Absent some showing of extraneous prejudice, the submission of a question of law is harmless: if it is answered as the court should have decided, it can hardly damage; if it is answered to the contrary, the finding would be immaterial and hence should be ignored.

We are of the opinion that the trial court's judgment based upon the jury's verdict reaches the same result as the trial judge should have reached had the constructive notice inquiry consisted of factual questions or issues from which the court could then determine whether constructive notice existed. If there was error in the submission of the issue because it contained a question of law or mixed law and fact, we hold that such error was harmless. *City of Houston v. Howe & Wise,* 323 S.W.2d 134, 143 (Tex. Civ.App.—Houston 1959, writ ref'd n.r.e.).

■ An issue constitutes a comment on the weight of the evidence only when its wording indicates an opinion by the trial court as to the verity of the fact inquired about. *McNutt v. Intratex Gas Co.,* 600 S.W.2d 947, 951 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). The court's charge is not objectionable as a comment on the weight of the evidence where it is properly a part of the explanatory instruction or definition. *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797, 803 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). We find no reversible error in the inclusion of a statement concerning a *lis pendens* notice by the trial court in the constructive notice definition. Point of error forty-four is denied.

U.S. Life's points of error forty-five through fifty-six and Munn's points of error thirteen through sixteen assert error based on the submission of: (1) special issue three inquiring of notice to U.S. Life of the repurchase agreement as of June 2, 1980; (2) special issue four inquiring as to Hoelscher's ability to discharge her obligation, if any, under the repurchase agreement of September 27, 1978; (3) special issue five inquiring as to the market value of the instant property on September 27, 1980; and (4) special

issue six inquiring what amount, if any, G.M. Andreen would have to pay Hoelscher for the instant property on September 27, 1978.

 Error in the submission of an issue is harmless when the findings of the jury in answer to the other issues are sufficient to support the judgment, *Texas & New Orleans Railroad Co. v. McGinnis,* 130 Tex. 338, 109 S.W.2d 160, 163 (1937), unless the erroneously submitted issue confuses or misleads the jury. *H.E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501, 504 (Tex.Civ.App. —San Antonio 1949, writ ref'd n.r.e.). The improper submission of issues constitutes reversible error only when harm is suffered by the complaining party. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749–750 (Tex.1980). In the instant case, the jury found that the repurchase agreement between the Andreens and Hoelscher was supported by consideration and that Munn was not in the posture of a *bona fide* purchaser for value when he purchased the subject property. These findings were sufficient to support the judgment of the trial court. Appellants have failed to demonstrate, and we are unable to discern, how the submission of the challenged issues would confuse or mislead the jury as to the *bona fide* purchaser status of Munn or the existence of supporting consideration. Appellants' points of error are overruled.

 Appellant Munn's point of error seventeen contends the trial court erred in refusing to allow counsel for Munn to withdraw after it appeared that counsel might be called as a witness on behalf of his client. Point of error eighteen asserts trial court error in refusing to grant Munn's motion for mistrial. These issues arose after Joe Hoelscher, father of defendant, Valeria Hoelscher, testified concerning alleged conduct by counsel for Munn that questioned counsel's conduct on behalf of his client. Counsel for Munn outlined in a bill of exception testimony contradicting Joe Hoelscher's statements.

A lawyer shall withdraw as counsel after undertaking employment in contemplated or pending litigation where he learns or it is obvious that he may be called as a witness on behalf of his client. DR5—102, Title 14 App. art. 12, § 8 (1973). The lawyer may continue the representation if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer in the particular case. DR5–101(B)(4), *supra.* We are of the opinion that the trial judge, as a result of his observation of the trial proceedings, was qualified to determine if withdrawal was warranted. We find appellant's argument that allegations of improprieties by Munn's counsel would be imputed to him insufficient to establish probable harm as required by Tex.R.Civ.P. 434. Points of error seventeen and eighteen are overruled.

The judgment of the trial court is affirmed.